# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

VIVIAN JANET BOWMAN                                            PLAINTIFF

v.                                            CIVIL ACTION NO. 3:13CV-392-H

MR. RONALD MARSTIN *et al.*                             DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Vivian Janet Bowman filed a *pro se* civil complaint. Rule 12(h)(3) of the Federal Rules of Civil Procedure provides, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." A review of the complaint reveals that this Court lacks jurisdiction over the subject matter contained therein. Accordingly, the Court will dismiss the action.

### I.

Plaintiff brings suit against Mr. Ronald Marstin and the Legal Aid Society. She claims that "Marstin is liar, he spoke [and] has written liar words" and "is attorney employed with salary and full benefits by Louisville Legal Aid Society." Her allegations involving Defendants surround a contested debt from Bowling Green Towers and its collection by National Credit Systems, Inc. She contends that "Marstin <u>is involved</u> with Bowling Green Towers apartment place in Bowling Green, Ky. [and] National Credit Systems, Inc. in Atlanta, Georgia in fraudulent racketeering scheme to cheat me out of my money" and that he "is doing blackmail extortion to get my money by threatening to prevent me from having a place to live – a place that I could afford to rent."

Plaintiff alleges that after she recently applied to rent an apartment in Louisville, National Credit Systems, Inc., stated that she owed $627.47 to Bowling Green Towers apartment place and "Now they say that I will be homeless because if I do not pay $627.47 I will not be allowed to have a place to live." Plaintiff contends that she does not owe Bowling Green Towers any money. She states that she moved out of Bowling Green Towers on January 30, 2010, after giving a 30-day notice and returning the apartment key on the last day. She reports asking for her $100 deposit, but it was not returned. "Instead Bowling Green Towers did lie [and] fraud by telling National Credit Systems, Inc. To get $627.47 from me that I did not owe."

> In 2010 I went to Louisville Aid Society [and] met defendant Ronald Marstin. After showing to him my papers including my rent receipts [and] copy of my 30 days notice, he explained to me that some bad dishonest apartment managers do as this wrong that Bowling Green Towers has done to me. Yet he explained to me not to worry because he would take care of this wrong where they could not prevent me from having a place to live [and] trying to get $627.47 from me which I did not owe.

Plaintiff reports that on March 19, 2013, after applying for the Louisville apartment and being told she owed a debt to Bowling Green Towers, "I called Mr. Marstin because he had told me that this wrong he had taken care of." She attaches a letter written by Mr. Marstin in response to her phone call. Therein, Mr. Marstin explained as follows:

> Ms. Bowman brought to my office on August 21, 2010 a letter from a collection agency attempting to collect a debt of $627 originally owing to Bowling Green Towers. Ms. Bowman believed she did not owe[] the money because she had given to the landlord all the notice required under the lease.
>
> I reviewed the lease. Ms. Bowman pointed to the clause permitting her to break the lease on 30 days' notice to the landlord. However, while she might have been able to argue that there was some ambiguity in the lease, I advised her that I thought the 30-day notice referred not to an early termination of the lease but to the end of the lease period–in this case, October, 2010. That is, I read the lease to provide that the one-year lease would automatically renew unless the tenant gave 30 days' notice.

2

> While I believed that Ms. Bowman had misinterpreted the lease and likely had no valid defense to the collection action, I had no doubt that she acted in good faith.

Plaintiff claims that "His words are lies" and reports that on April 11, 2013, "I was on first level lobby of Louisville Legal Aid [and] I knock on their door. Because it is important that I see defendant [and] tell him 'this is liar words.' 'This is a lie' And this is what I said to a liar. Then I leave."

Plaintiff reports that she paid the debt to National Credit Systems, Inc., with her American Express card, and she attaches a letter dated April 2, 2013, from a "Collection Representative" of National Credit Systems, Inc., indicating that her "debt has been satisfied in full" and releasing her of further obligation relating to the Bowling Green Towers account.

Despite paying the debt, Plaintiff states, "This is very sad that Legal Aid Society is a law firm that is dishonest [and] does not pursue justice for a person living in poverty. This is terrible injustice to steal my money. [] I want my money back."

**II.**

It is axiomatic that federal district courts are courts of limited jurisdiction, and their powers are enumerated in Article III of the Constitution and in statutes enacted by Congress. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see generally*, 28 U.S.C. §§ 1330-1364. Therefore, "[t]he first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue." *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 606-07 (6th Cir. 1998). Without jurisdiction, courts have no power to act. *Id.* at 606. The burden of establishing jurisdiction rests with the plaintiff. *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000); *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d at 606.

Under the federal-question statute, codified at 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff does not specify any cause of action arising under the Constitution, laws, or treaties of the United States. In alleging that Defendant Marstin "is involved . . . in fraudulent racketeering scheme to cheat me out of my money" and "is doing blackmail extortion to get my money by threatening to prevent me from having a place to live," Plaintiff may be attempting to bring an action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. She fails to state a RICO claim, however, as she alleges no facts in support of these broad and conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Instead, the facts Plaintiff alleges against Defendants sound, at most, in state tort law. Plaintiff, therefore, fails to establish this Court's federal-question jurisdiction.

To the extent Plaintiff is asserting a state-law, legal-malpractice claim, she also fails to establish this Court's diversity jurisdiction. Under 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states. . . . " Plaintiff, however, alleges neither the requisite amount-in-controversy nor that she and Defendants are citizens of a state other than Kentucky. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."). Plaintiff, therefore, cannot establish diversity jurisdiction.

4

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979). Additionally, this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To do so would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Since even a liberal reading of the complaint leads this Court to conclude that Plaintiff has failed to establish this Court's jurisdiction, the instant action will be dismissed by separate Order.

Date:

cc: Plaintiff, *pro se*
    Defendants
4412.005